## Mineral Railroad & Mining Company, Appellant, *v.* Northumberland County Commissioners (No. 2).

*Taxation—Assessments—Coal lands—Market value.*

1. In fixing the assessment the purchase price of coal lands in 1870 with testimony tending to show that there had been no increase in value since that time, may be some evidence of market value, but it is very remote and not the best evidence and the court will not consider it as conclusive where other and better evidence could have been produced by the owner.

2. Virgin unproductive coal lands should not be valued higher than lands being operated from which a portion of the coal has been mined. Where lands are being operated allowance should be made for the acreage exhausted.

3. When coal lands are valued for taxation according to the ratio of assessed to actual value of other real estate in the county, the owner cannot complain.

Argued Oct. 6, 1910. Appeal, No. 15, Jan. T., 1910, by plaintiff, from decree of C. P. Northumberland Co., Dec. T., 1907, No. 338, fixing valuation of coal lands in case of Mineral Railroad & Mining Company v. Northumberland County Commissioners. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Appeal from valuation of coal lands.

For the facts see Mineral Railroad & Mining Co. v. Northumberland County Commissioners, supra, and the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*W. H. M. Oram,* for appellant.

*J. W. Gillespie,* for appellee.

OPINION BY MR. JUSTICE ELKIN, January 3, 1911:
What was said in the preceding case applies to the

questions raised by this appeal. The lands involved in this proceeding are owned by the same appellant but are located in Mt. Carmel township. The hearing was conducted and the valuations fixed in the same way in both cases. The rules of law applicable are the same and the assignments are intended to set out the same kind of errors. It, therefore, will be unnecessary to elaborate the discussion in disposing of this appeal. Many of the assignments of error do not comply with the rules of this court and might be dismissed upon technical grounds. Although there are many assignments there is but one fundamental and controlling question for this court to review, and that is, did the learned court below make a fair and just valuation of the coal lands of appellant having due regard to the valuation and assessment of other real estate in the county? For the reasons stated in the preceding opinion we think the answer must be in the affirmative. The valuation of each tract was fixed at sixty per cent of its actual market value. This, it is conceded, was the average ratio of assessed to actual value applied generally to the assessment of real estate throughout the county. Appellant had the benefit of this reduction and instead of being taxed on full value only pays taxes upon a valuation representing three-fifths of the actual value. Of course there is difference of opinion as to the actual market value of the properties in question and also as to the proper method of determining those values. It is contended that the court below made no effort to value the lands upon the basis of present market value and complaint is made because the evidence of deeds produced at the hearing which showed the purchase price in 1870, supplemented by expert testimony to the effect that the lands had not increased in value, was disregarded. So far as we have been able to discover from the record this was the only attempt made by appellant to prove the present market value of its lands. We are not prepared to say that the purchase price of lands in 1870, followed by expert testimony tend-

ing to show that there had been no increase in value since that time, is not some evidence of market value, but to say the least it is very remote and certainly not the best evidence available to establish present market value. Appellant being the owner for such a long period of time presumably had the best knowledge of the actual value of the lands and could have produced witnesses to prove present values. It did not do so and the inference is that it did not deem it advisable so to do. The appellees, not having knowledge of any sales or selling price, had of necessity to prove other elements of value as a basis to fix a fair valuation. The court took all of these things into consideration in ascertaining what it considered an equitable valuation for assessment purposes. A careful examination of this record has convinced us that the valuation of the lands of appellant fixed by the court was amply sustained by the evidence, that it was not higher than its present market value, and when the assessment was made at sixty per cent of the value so determined there was compliance with the constitutional provision requiring uniformity. When the valuation of these coal lands was made according to the ratio of assessed to actual value of other real estate in the county the court acted within the reason and spirit of the act of 1889.

It is argued for appellant that virgin unproductive coal lands should be valued higher than lands being operated from which a portion of the coal has been mined. This position is inconsistent with the theory mainly relied on by appellant and is unsound in principle as applied to the valuation of lands for assessment purposes. It makes quantity the basis of valuation and this is strongly objected to in other parts of the argument. It also ignores selling price at a bona fide sale as the measure of assessable value. The test is what would the land sell for on the market after due notice. It is a matter of common knowledge and experience that a developed going coal property has a higher value acre for acre of coal than undeveloped and unproductive virgin lands.

Of course as the coal is mined and removed there should be an allowance for the acreage thus exhausted. It is the coal in place that is taxed as real estate, and if the coal be entirely exhausted there is nothing to tax on this account, or if it be partly mined and removed, the acreage remaining is the subject upon which the assessment operates. It is true where there has been no severance of the coal from the surface the superficial area is the subject for taxation, but when the coal is exhausted the value of the surface is as a rule only nominal, and when the coal is partly mined, its value is reduced by the coal acreage thus removed. Due allowance for the number of acres of coal mined should be made by assessors and all others having to do with fixing valuations for the purpose of taxation. In the present case allowance was made and appellant is not in position to complain. We find nothing in the record to warrant a reversal.

Decree affirmed at cost of appellant, costs in the court below to be paid as there directed.